**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Securities and Exchange Commission, )  No. CV-15-01814-PHX-SPL
                                 )
                 Plaintiff, )  **ORDER**
vs.                          )
                                 )
Mogler et al.,                )
                                 )
                 Defendants. )
                                 )

Before the Court are the Securities and Exchange Commission's ("SEC") Motion for Summary Judgment as to Liability and Non-Monetary Relief (the "Motion") (Doc. 99-1) and defendant Hinkeldey's Response to the Motion (Doc. 105). Defendants Mogler, Polanchek, and Stevens have not filed a response to the Motion.

## I. Background[1]

On September 10, 2015, a criminal indictment (the "Indictment") was unsealed. *See United States v. Mogler at al.*, Case No. 2:15-CR-01118-PHX-SPL (D. Ariz.) The Indictment charged defendants Mogler, Stevens, Hinkeldey, and Polanchek (the "Defendants") with a conspiracy to violate and violations of the federal mail fraud, wire fraud, identity theft, and money laundering statutes. (Doc. 99-2, Ex. 1)

On September 11, 2015, the SEC filed a civil complaint (the "Complaint") against

---

[1] For purposes of resolving the Motion for Summary Judgment, the following background is offered for context and based only on undisputed facts or, where there is a dispute, the non-moving party's version of events if such version is available.

the Defendants alleging violations of various provisions of federal securities laws. (Doc. 1) The Complaint alleges that Defendants have violated the antifraud provisions of the Securities Act of 1933 (the "Securities Act) and the Securities Act of 1934 (the "Exchange Act"), the securities registration provisions of Section 5 of the Securities Act, and that Defendants Polanchek and Buckley have violated the broker-dealer registration provisions of Section 15 of the Exchange Act. (Doc. 1 at 2–3) It further alleges that those violations took place when the Defendants engaged in a fraudulent unregistered securities offering in which they promoted and sold $18 million in high-yield promissory notes, claiming that funds raised through the sale of the notes would be used to acquire and develop beachfront property in Mexico, operate recycling facilities, and purchase foreclosed residential properties for later resale at a profit. (Doc. 1 at 6–7) The Complaint and the Indictment concerned the same victims and the same allegedly fraudulent scheme. (Docs. 1 at 3, 27–32; 99-2, Ex. 1 at ¶ 11)

Defendant Mogler pleaded guilty to one count of conspiracy, 18 U.S.C. § 371, one count of wire fraud, 18 U.S.C. § 1343, and one count of money laundering, 18 U.S.C. § 1957. *United States v. Mogler et al.,* Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 113. He was sentenced to a 292-month prison term and ordered to pay restitution in the amount of $14,019,815.56. *United States v. Mogler et al.,* Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 439. In his plea agreement, Defendant Mogler admitted the following facts: he and Defendant James Hinkeldey orchestrated and directed a scheme to promote and sell fraudulent high-yield investment products, primarily involving: real estate development projects in Sonora, Mexico; waste management companies in Nevada and Illinois; and distressed residential real estate in Arizona. (Doc. 99-2, Ex. 2 at 12) Defendant Mogler admitted that, acting in concert with his co-defendants, he defrauded investors to obtain funds by making materially false promises, representations, and omissions to them either orally, in-person and over the radio, or in writing in offering materials. (Doc. 99-2, Ex. 2 at 12) The Court notes that Defendant Mogler has filed a petition to vacate his sentence under 28 U.S.C. § 2255 arguing ineffective assistance of counsel. *See Mogler v.*

2

*United States*, Case No. 2:20-CV-00173-SPL-DMF, doc. 1.

Defendant Stevens pleaded guilty to one count of conspiracy to commit wire fraud, 18 U.S.C. § 371. *United States v. Mogler et al.,* Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 132. He was sentenced to 36 months of probation and ordered to pay $8.2 million in restitution. *United States v. Mogler et al.,* Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 602. In his plea agreement, Defendant Stevens admitted the following facts: he participated in a fraudulent scheme to promote and sell fraudulent high-yield investment products involving real estate development projects in Sonora, Mexico; he conspired and acted with other who were knowingly involved in the fraudulent scheme which was designed to obtain funds from investors by means of materially false promises, representations, and omissions made orally and in writing related to the purported projects. (Doc. 99-2, Ex. 3 at 11)

Defendant Hinkeldey proceeded to trial and a jury returned a verdict finding him guilty of conspiracy, 18 U.S.C. § 371, wire fraud, 18 U.S.C. § 1343, money laundering, 18 U.S.C. § 1957, mail fraud, 18 U.S.C. § 1341, aggravated identity theft, 18 U.S.C. § 1028A, and transactional money laundering, 18 U.S.C. § 1957. *See United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), docs. 488–89, 491, 493, 495, 497–99, 501–502, 505, 512, and 520. He was sentenced to a 365-month prison term and ordered to pay $14,019,818.56 in restitution. *United States v. Hinkeldey*, Case No. 2:15-CR-01118-002-PHX-SPL (D. Ariz.), doc. 678. Defendant Hinkeldey has appealed the jury verdict and sentence, and the appeal is pending as of the date of this Order. (Doc. 105 at 2)

Defendant Polanchek pleaded guilty to observing grand jury proceedings, a class A misdemeanor offense, in violation of 18 U.S.C. § 1508. *See United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 720. All other counts in the Indictment were dismissed. *United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 714 at 1–2.

The SEC filed its Motion on November 12, 2019. (Doc. 99-1) Defendant Buckley consented to entry of judgment against him. (Doc. 104) Judgment was entered accordingly

by the Court. (Doc. 110) Defendant Hinkeldey filed a response to the Motion, objecting in part to the SEC's statement of facts in support of its Motion, but agreeing to the entry of judgment for summary judgment and non-monetary relief proposed by the SEC although he has appealed the jury verdict and sentence from the criminal case. (Doc. 105) The Court's ruling on the Motion is as follows.[2]

## II. Legal Standard

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323 (citations omitted). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* Summary judgment is, therefore, proper if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Id.*

---

[2] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## B. Collateral Estoppel

The doctrine of collateral estoppel or issue preclusion prohibits relitigation of an issue of fact or law that has been decided in earlier litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n.5 (1979). Additionally, it is "well-established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951). "Such estoppel only extends to questions distinctly put in issue and directly determined in the criminal prosecutions." *Id.* at 569 (quoting *Frank v. Mangum*, 237 U.S. 309, 334 (1915)). Furthermore, in a case of criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment. *Id.*; *see also United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) ("a criminal conviction, whether by a jury verdict or *guilty plea*, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."). "Although it is settled law in this Circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit, preclusion has only been allowed where an element of the crime to which the defendant pled guilty or of which he was convicted was at issue in the second suit." *United States v. Real Property Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992); *see also United States v. $31,697.59 Cash*, 665 F.2d 903, 906 (9th Cir. 1982). Courts have not hesitated to apply the doctrine to civil securities fraud violations in civil suits when similar issues of facts arose and were necessarily decided in the criminal case. *SEC v. Braslau*, 2016 WL 5922666, at *3 (C.D. Cal. May 13, 2016) (citing *SEC v. Alexander*, 2015 U.S. Dist. LEXIS 93476, *10 (N.D. Cal. July 17, 2015)); *see also SEC v. Reyes*, 2008 U.S. Dist. LEXIS 65895, at *2 (N.D. Cal. Aug. 25, 2008); *SEC v. Bilzerian*, 29 F.3d 689, 694 (D.C. Cir. 1994); *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993); *SEC v. McCaskey*, 2001 U.S. Dist. LEXIS 13571, at *11–12 (S.D.N.Y. Sept. 6, 2001); *In re Towers Fin. Corp. Noteholders Litig.*, 75 F. Supp. 2d 178, 181 (S.D.N.Y. 1999); *SEC v. Everest Mgmt. Corp.*, 466 F. Supp. 167, 172 (S.D.N.Y. 1979).

In the Ninth Circuit, to find that collateral estoppel applies based on a prior criminal conviction, a court must conclude that

> (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity [sic] have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*Real Property Located at Section 18*, 976 F.2d at 518 (quoting *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990)).

Furthermore, with regards to the third prong, the doctrine will apply even where the statutes charged in the criminal action and those charged in the subsequent civil action are not identical so long as the factual bases of the two actions are the same. *Ivers. v. United States*, 581 F.2d 1362, 1367 (9th Cir. 1978); *see also SEC v. Pace*, 173 F. Supp. 2d 30, 33 (D.D.C. 2001) (conviction for two counts of wire fraud collaterally estopped defendant from contesting element of scienter under all the securities laws he was charged with civilly violating).

### III.    Discussion

At the outset, the Court notes that judgment was already entered against Defendant Buckley in this case based on his consent. (Docs. 104, 110) Additionally, Defendant Hinkeldey has agreed to the entry of summary judgment and non-monetary relief proposed by the SEC (Doc. 105) and judgment will be entered against him accordingly. This leaves the Court with analyzing the SEC's Motion as to Defendants Mogler, Polanchek, and Stevens only.

#### A.    The Definition of a Security

One common issue as to each of the remaining Defendants is whether the fraudulent

scheme involved securities as that term is defined under securities laws and case law. Section 2(a)(1) of the Securities Act defines a security as, among a long list of terms, "an investment contract." 15 U.S.C. § 77b(a)(1). Section 3(a)(10) of the Exchange Act also defines a security as, among other terms, an "investment contract." 15 U.S.C. § 78c(a)(10). None of the other definitions in those two statutes appear to apply to the scheme which is the basis for the criminal and the civil cases against the Defendants.

The Supreme Court has defined an "investment contract" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). To determine whether a particular scheme fits the definition of an investment contract, the Ninth Circuit uses a three-part test assessing if there was: "(1) an investment of money; (2) in a common enterprise, evidenced by either horizontal or vertical pooling; (3) with an expectation of income or profits to be derived solely from the efforts of a promoter or a third party." *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003) (quoting *SEC v. R.G. Reynolds Enters., Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991)). Commonality of enterprise is further defined as "an enterprise common to an investor and the seller, promoter, or some third party (vertical commonality) or an enterprise common to a group of investors (horizontal commonality)." *R.G. Reynolds*, 952 F.2d at 1130 (citing *Hocking. v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989)).

In this case, no reasonable juror could conclude that the allegedly fraudulent scheme the Defendants engaged in did not require the investment of money from investors and the first prong of the test is satisfied. Additionally, the investors were asked to invest in the promissory notes and the Defendants represented that they were in charge of purchasing and developing property in Mexico as well as recycling facilities, and distressed residential properties with the funds. (Doc. 1 at 6–7) Accordingly, the Court finds that no reasonable juror could find that there was no common enterprise in the scheme. Finally, the investors clearly expected profits and revenue from the promissory notes and they were not required to do anything besides investing their money. (Doc. 1 at 6–7) Accordingly, the Court finds

that no reasonable juror could find that the third prong of the test for an investment contract is not met.

Accordingly, the Court finds that the investments offered in the scheme which gave rise to this civil action were securities under both the Securities and the Exchange Acts and that all of the Defendants' relevant conduct took place in connection with the sale or purchase of securities.

**B.  Summary Judgment as to Defendant Mogler**

As to the first of the four requirements for the application of collateral estoppel to Mogler set forth in *Real Property Located at Section 18*, it is clear that the prior conviction was for a serious offense. Although Mogler pleaded guilty and was not tried in front of a jury, he pleaded guilty to one count of conspiracy, 18 U.S.C. § 371, one count of wire fraud, 18 U.S.C. § 1343, and one count of money laundering, 18 U.S.C. § 1957. *United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 113. He was sentenced to a 292-month prison term and ordered to pay restitution in the amount of $14,019,815.56. *United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 439. Accordingly, the Court finds that, with respect to Mogler, the first requirement for application of collateral estoppel is met.

The second requirement for the application of collateral estoppel is more puzzling on its face. Indeed, Mogler has filed a petition to vacate his sentence under 28 U.S.C. § 2255 arguing ineffective assistance of counsel. *See Mogler v. United States*, Case No. 2:20-CV-00173-SPL-DMF, doc. 1. He is clearly challenging the validity of his conviction and sentence through that proceeding, which would appear to prevent the Court from finding that the second requirement for the application of collateral estoppel is met. Nevertheless, it is well-settled that "the preclusive effects of a lower court judgment simply cannot be suspended by taking an appeal that remains undecided." *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) (quoting *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988)); *see also United States v. Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990) (pendency of criminal appeal does not deprive judgment of preclusive effect); *Erebia v.*

*Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 n. 1 (6th Cir. 1989); *Jaffree v. Wallace*, 837 F.2d 1461, 1466–67 (11th Cir. 1988); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983). Accordingly, although it is possible that the court in the other pending civil case would find that Mogler's conviction and sentencing need to be vacated, as of the date of this Order, the Court finds that the second requirement for the application of collateral estoppel to Mogler in this case is met.

The third requirement for the application of collateral estoppel is easily disposed of. Mogler pleaded guilty to one count of conspiracy, 18 U.S.C. § 371, one count of wire fraud, 18 U.S.C. § 1343, and one count of money laundering, 18 U.S.C. § 1957. *United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 113. The factual basis which served as the basis for his plea, conviction, and sentencing is the same as the factual basis used by the SEC in this civil case. The two actions were predicated on the exact same fraudulent scheme. (Docs. 1 at 12; 99-2, Ex. 2 at 12) Accordingly, because Mogler, in his guilty plea, admitted the same facts which are the basis for the SEC's civil case here, the Court finds that the third requirement for application of collateral estoppel is met.

Regarding the fourth and final requirement, Mogler was the party who pleaded guilty in the criminal case and the SEC is seeking the application of collateral estoppel against him in this case. Accordingly, the Court also finds that Mogler's guilty plea satisfies the fourth requirement for application of collateral estoppel.

Having established that Mogler is collaterally estopped from relitigating the issues decided through his guilty plea, the Court must now determine whether it should grant the SEC's Motion against Mogler. To do so, the Court must compare the elements the SEC has to prove in this civil case with the elements of Mogler's guilty plea and conviction for mail and wire fraud.

In the Complaint, the SEC alleged: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5; (2) violations of Section 17(a) of the Securities Act; (3) violations of Sections 5(a) and (c) of the Securities Act, and (4) violations of Section 15(a)(1) of the Exchange Act (this last claim only against Defendants Polanchek and Buckley). The Court

9

looks at each of those violations in turn.

### a. Mogler's Violations of Section 10(b) and Rule 10b-5

Section 10(b) of the Exchange Act prohibits anyone from

> directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . . us[ing] or employ[ing], in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device.

15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person

> (a) [t]o employ any device, scheme, or artifice to defraud,
>
> (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Violations of Section 10(b) and Rule 10b-5 require a showing of scienter on the part of the Defendant. *Aaron v. SEC*, 446 U.S. 680, 691 (1980). Scienter is defined as a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), *abrogated on other grounds*. Scienter may be established by a showing of either actual knowledge or recklessness. *Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010); *In re Software Toolworks, Inc.*, 50 F.3d 615, 626 (9th Cir. 1994). Scienter may be established therefore by showing that the defendants knew their statements were false, or that defendants were reckless as to the truth or falsity of their statements. *Gebhart*, 595 F.3d at 1041. The misstatements or omissions, if applicable, must

concern material facts. *Basic Inc. v. Levinson*, 485 U.S. 224, 331–32 (1988). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *See TSC Indus. V. Northway*, 426 U.S. 438, 449 (1976).

Mogler pleaded guilty to one count of conspiracy, 18 U.S.C. § 371, one count of wire fraud, 18 U.S.C. § 1343, and one count of money laundering, 18 U.S.C. § 1957. *See United States v. Mogler et al.*, Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 113. The elements of a wire fraud are "a scheme to defraud, use of the wires in furtherance of the scheme, and the specific intent to defraud." *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003). Additionally, the scheme to defraud includes misrepresentations, false pretenses, or promises, and those statements must be of a material fact. 18 U.S.C. § 1343; *see also Neder v. United States*, 527 U.S. 1, 25 (1999). By agreeing to plead guilty to the wire fraud, Mogler admitted that all those elements were present.

It is easy to see that those elements also satisfy the elements necessary for violations of Section 10(b) of the Exchange Act and Rule 10b-5. Mogler admitted to: having engaged in a scheme to defraud (Section 10(b) and Rule 10b-5(a)), having the specific intent to defraud (the scienter requirement under Section 10(b) and Rule 10b-5), making materially false or misleading statements (Section 10(b) and Rule 10b-5(b)), and using the means of interstate communication (Section 10(b) and Rule 10b-5 in general).

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Mogler's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5 and will grant the SEC's Motion as to Count I of the Complaint against Mogler.

**b. Mogler's Violations of Section 17(a)**

Section 17(a) of the Securities Act makes it

> unlawful for any person in the offer or sale of any securities . .
> . by the use of any means or instruments of transportation or
> communication in interstate commerce or by use of the mails,
> directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). Although a violation of Section 17(a)(1) requires a showing of scienter, violations of Section 17(a)(2)–(3) require a showing of either scienter or simple negligence. *Aaron*, 446 U.S. at 697. Negligence is the failure to act with reasonable prudence. *See SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

To prove a violation of Section 17(a)(2), the SEC must prove that, in connection with the offer or sale of a security, the defendant: (1) by means of interstate commerce; (2) obtained money or property; (3) by means of a material false statement or omission; and (4) that the defendant acted at least negligently. *See, e.g.*, *id.*

It is again easy to see that Mogler's guilty plea to wire fraud satisfy the elements for violations of Section 17(a) of the Securities Act. Mogler admitted to: having engaged in a scheme to defraud (Section 17(a)(1)), having the specific intent to defraud (the scienter requirement for Section 17(a)(1) and more than the mere negligence required under Section 17(a)(2) and (3)), making materially false or misleading statements (Section 17(a)(2)), and using the means of interstate communication (Section 17(a) in general).

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Mogler's alleged violations of Section 17(a) of the Securities Act and will grant the SEC's Motion as to Count II of the Complaint against Mogler.

### c. Mogler's Violations of Sections 5(a) and 5(c)

Section 5(a)(1) of the Securities Act prohibits the direct or indirect sale of securities

unless a registration statement is in effect. 15 U.S.C. § 77e(a). Section 5(c) of the Securities Act prohibits the offer or sale of securities unless a registration statement is effective. *Id.* § 77e(c). To establish a violation of Section 5, the SEC must show that "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). "Once the SEC introduces evidence that a defendant has violated the registration provisions, the defendant then has the burden of proof in showing entitlement to an exemption." *Id.* (quoting *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980)). Section 5 imposes strict liability for violations of its registration requirements. *Id.* at 1257.

In his guilty plea for wire fraud, Mogler admitted that he participated in a scheme to sell fraudulent investment products, which the Court has already found to be securities, and that he made false or misleading statements in writing and orally over the radio or in-person. (Doc. 99-2, Ex. 2 at 12) Mogler does not appear to have challenged the fact that no registration statement was effective when he engaged in the scheme. He clearly has not argued that the scheme was entitled to an exemption from registration or offered any fact which would support such argument. The Court finds that all the elements of a claim under Sections 5(a) and 5(c) of the Securities Act are present and that the SEC met its burden of proof.

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Mogler's alleged violations of Sections 5(a) and 5(c) of the Securities Act and will grant the SEC's Motion as to Count III of the Complaint against Mogler.

### C.    Summary Judgment as to Defendant Stevens

Defendant Stevens pleaded guilty to one count of conspiracy to commit wire fraud, 18 U.S.C. § 371. *United States v. Mogler et al.,* Case No. 2:15-CR-0118-PHX-SPL (D. Ariz.), doc. 132. In his plea agreement, Defendant Stevens admitted the following facts: he participated in a fraudulent scheme to promote and sell fraudulent high-yield investment products involving real estate development projects in Sonora, Mexico; he conspired and

13

acted with other who were knowingly involved in the fraudulent scheme which was designed to obtain funds from investors by means of materially false promises, representations, and omissions made orally and in writing related to the purported projects. (Doc. 99-2, Ex. 3 at 11)

The Court must first determine if collateral estoppel based on Stevens's guilty plea is applicable in this case. The Court finds that all four criteria are easily met as to Defendant Stevens. Stevens did not answer the Motion. His guilty plea and resulting conviction clearly were for a serious offense, conspiracy to commit wire fraud. The Court did not find any filings where Stevens challenges his guilty plea or calls into question the fairness of the plea agreement. Furthermore, by pleading guilty to the count of conspiracy to commit wire fraud, Stevens admitted the factual basis set forth above and those facts are the same the SEC is now raising in the Complaint. Those facts were necessarily decided through the guilty plea. Stevens was clearly the party in the criminal trial against whom collateral estoppel is invoked in this case. Accordingly, Stevens is collaterally estopped from relitigating the issues which were decided through his guilty plea.

Having established that collateral estoppel applies to Stevens, the Court must now determine whether it should grant the SEC's Motion against Stevens. To do so, the Court must compare the elements the SEC has to prove in this civil case with the elements of Stevens's guilty plea and conviction for conspiracy to commit wire fraud.

**a. Stevens's Violations of Section 10(b) and Rule 10b-5**

At the outset, the Court notes that although Stevens did not respond to the Motion, he asserted his privilege against self-incrimination under the Fifth Amendment in his answer to the Complaint. (Doc. 55 at 2). His answer was filed before the criminal proceedings took place and before he pleaded guilty and was convicted of conspiracy to commit wire fraud.

Stevens's guilty plea to one count of conspiracy to commit wire fraud admitted that

[b]etween about January 1, 2006, and June 30, 2014, in the

District of Arizona and elsewhere:

14

1.  There was an agreement between two or more persons to commit the crime of wire fraud, in violation of 18 U.S.C. § 1343;

2.  [Stevens] became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3.  [o]ne of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy between September 8, 2010, and June 30, 2014.

(Doc. 99-2, Ex. 3 at 10) Stevens also admitted that he participated in a fraudulent scheme to promote and sell fraudulent high-yield investment products involving real estate development projects in Sonora, Mexico; he conspired and acted with other who were knowingly involved in the fraudulent scheme which was designed to obtain funds from investors by means of materially false promises, representations, and omissions made orally and in writing related to the purported projects. (Doc. 99-2, Ex. 3 at 11)

Stevens's guilty plea satisfies the elements the SEC needs to prove in this case for a violation of Section 10 of the Exchange Act and Rule 10b-5. Indeed, Stevens admitted that he participated in a fraudulent scheme, knowing of at least one of its fraudulent purposes, the scheme took place over interstate, in-person, and in-writing communications, and he admitted the scheme involved materially false promises, representations, and omissions. The Court has also found that no reasonable juror could find that the scheme did not involve securities.

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Stevens's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5 and will grant the SEC's Motion as to Count I of the Complaint against Stevens.

**b. Stevens's Violations of Section 17(a)**

With regards to Stevens's alleged violations of Section 17(a), the Court finds that summary judgment in favor of the SEC is appropriate for the reasons stated above for the alleged violations of Section 10(a) of the Exchange Act and Rule 10b-5. Indeed, the sub-

sections of Section 17(a) of the Securities Act are not very different from Section 10(a) of the Exchange Act and Rule 10b-5. Although the state of mind requirements varies between the sections, based on Stevens's guilty plea, the elements for any of the sub-sections of Section 17(a) are met. Stevens admitted to: having participated in a scheme to defraud (Section 17(a)(1)), having the specific intent to defraud by knowing of at least one of the fraudulent goals of the scheme (the scienter requirement for Section 17(a)(1) and more than the mere negligence required under Section 17(a)(2) and (3)), making materially false or misleading statements (Section 17(a)(2)), and using the means of interstate communication (Section 17(a) in general).

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Stevens's alleged violations of Section 17(a) of the Securities Act and will grant the SEC's Motion as to Count II of the Complaint against Stevens.

### c. Stevens's Violations of Section 5(a) and (c)

Stevens has not answered the Motion and has not offered any contradictory facts to the SEC's position that no registration statement was effective at the time the Defendants engaged in the fraudulent scheme. He also offered no evidence that an exemption for registration of the offering was available. Accordingly, the Court finds that the elements of a violation of Sections 5(a) and 5(c) of the Securities Act are present because the Defendants offered and sold securities, no registration statement was effective at the time of such sales or offers, and they used the means of interstate commerce to do so.

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Stevens's alleged violations of Sections 5(a) and 5(c) of the Securities Act and will grant the SEC's Motion as to Count III of the Complaint against Stevens.

### D. Polanchek's Violations of Sections 5 and 15(a)

With regards to Polanchek, the Motion requests the entry of summary judgment on his liability for violating Section 15(a) of the Exchange Act and Section 5 of the Securities Act. (Doc. 99-1 at 15) Polanchek answered the Complaint, invoking his privilege against self-incrimination under the Fifth Amendment (Doc. 56 at 1), but did not answer the

Motion.

Section 15(a)(1) of the Exchange Act makes it unlawful

for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1). The SEC is not required to show scienter to establish a violation of Section 15(a)(1). *See, e.g.*, *SEC v. Alliance Leasing Corp.*, 2000 WL 35612001, at *6 (S.D. Cal. March 20, 2000) (citing *SEC v. Interlink Data Network of Los Angeles, Inc.*, 1993 WL 603274 (C.D. Cal. 1993)); *SEC v. National Executive Planners, Ltd.*, 503 F. Supp. 1066, 1073 (M.D.N.C. 1980). A broker is defined as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). "Engaged in the business" is not defined by statute but cases and SEC No–Action letters interpreting the phrase have indicated that regularity of participation in the trading of securities on behalf of someone else is the primary indicia of being "engaged in the business." *See, e.g.*, *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12–13 (D.D.C. 1998); *SEC v. Margolin*, 1992 WL 279735, at *5 (S.D.N.Y. September 30, 1992) (citing *Massachusetts Fin. Servs., Inc. v. Securities Investor Protection Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976)). "In determining whether a particular individual or entity falls within th[e] definition [of a broker-dealer], courts consider whether the individual may be characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution." *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) (quoting *SEC v. Hansen*, 1984 WL 2413, at *10 (S.D.N.Y. April 6, 1984)) (internal quotations omitted).

In sworn testimony in front of the Arizona Corporation Commission, Polanchek

admitted that he received at least $400,000 in referral compensation for marketing the fraudulent offerings. (Doc. 99-2, ex. 6 at 757:24–760:8) "A receipt of transaction-based compensation . . . is a hallmark of broker-dealer activity." *Brumberg, Mackey & Wall, P.L.C.*, SEC No–Act at 1–2 (May 17, 2010), https://www.sec.gov/divisions/marketreg/mr-noaction/2010/brumbergmackey051710.pdf (citing *Order Exempting the Federal Reserve Bank of New York, Maiden Lane LLC and the Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 from Broker-Dealer Registration*, Securities Exchange Act Release No. 61884 (April 9, 2010)).

Furthermore, "[p]arties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). The penalties a court can impose based on the invocation of the privilege against self-incrimination are wide-ranging. *See, e.g.*, *United States v. One Parcel of Real Property*, 780 F. Supp. 715, 722 (D. Or. 1991) (striking counterclaim and affirmative defense in their entirety because of defendant's use of the privilege); *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (granting summary judgment against the silent party). The Supreme Court has "consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause." *Palmigiano*, 425 U.S. at 319 (citing several other cases from the Supreme Court holding the same).

Polanchek invoked the privilege against self-incrimination in his answer to the Complaint but did not answer the Motion. He had the opportunity to present facts contradictory to those presented by the SEC in the Motion but he chose not to do so. There is nothing in the record which prevents the Court from drawing an adverse inference against Polanchek based on his invocation of his privilege against self-incrimination in this civil case. The Court finds that no reasonable juror could find that Polanchek was not acting as a broker when he participated in the fraudulent scheme, receiving several hundred thousand dollars in transaction-based compensation, and accordingly, he violated the

registration requirement of Section 15(a) of the Exchange Act. Furthermore, the Court finds that the elements of a violation of Sections 5(a) and 5(c) of the Securities Act are present because Polanchek conspired to offer and sell securities, no registration statement was effective at the time of such sales or offers, and those sales took place through the use of the means of interstate commerce.

Accordingly, the Court finds that there are no genuine issues as to any material fact regarding Polanchek's alleged violations of Section 15(a) of the Exchange Act and Section 5 of the Securities Act and will grant the SEC's Motion as to Count III and IV of the Complaint against Polanchek.

### E. Permanent Injunctions as to All Defendants

The SEC requested in the Motion that the Court permanently enjoin: (1) Defendants Mogler, Stevens, and Hinkeldey from violating Section 10(b) of the Exchange Act and Sections 5 and 17(a) of the Securities Act; and (2) Defendants Polanchek and Buckley from violating Section 15(a) of the Exchange Act and Section 5 of the Securities Act.[3]

Permanent injunctions may be granted on summary judgment, given the proper record. *Murphy*, 626 F.2d at 655 (9th Cir. 1980); *see also SEC v. Spence & Green Chemical Co.*, 612 F.2d 896, 903 (5th Cir. 1980), *as amended*, Fed. Sec. L. Rep. (CCH) P 97, 301; *Latta v. SEC*, 356 F.2d 103, 103 (9th Cir. 1965), *cert. denied*, 384 U.S. 940 (1966). In order to obtain a permanent injunction against the Defendants on summary judgment, the SEC bears the burden of showing there is a reasonable likelihood of future violations of the securities laws. *Murphy*, 626 F.2d at 655. The existence of past violations may give rise to an inference that there will be future violations. *Id.* In predicting the likelihood of future violations, the Court must "assess the totality of the circumstances surrounding the defendant and his violations." *Id.*; *see also SEC v. Koracorp Industries, Inc.*, 575 F.2d 692, 699 (9th Cir. 1978). In assessing the totality of circumstances, the Court considers factors

---

[3] Because judgment was already entered against Buckley, including the requested injunction (Doc. 110), and Hinkeldey agreed to the entry of the proposed judgment by the SEC against him (Doc. 105), which also contains the permanent injunction, the Court only analyzes whether a permanent injunction is appropriate against Defendants Mogler, Stevens, and Polanchek.

such as "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *Murphy*, 626 F.2d at 655; *see also, e.g.*, *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980), *as amended*, Fed. Sec. L. Rep. (CCH) P 97, 276; *SEC v. Universal Major Industries Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976). Those factors are not a binding and exclusive list of what the Court must consider before granting a permanent injunction. The Court now examines whether it should grant a permanent injunction against each Defendant in turn.

### a. Defendant Mogler

With regards to Defendant Mogler, the Court finds that a permanent injunction is appropriate. Indeed, Mogler pleaded guilty and admitted to knowingly engaging in the fraudulent scheme, clearly admitting that a high level of scienter was involved on his part; the violations were not a single, small occurrence, given that the scheme lasted several years and involved approximately $18 million in funds; by pleading guilty, Mogler did recognize and admit his guilty conduct, which is a factor that works against granting an injunction; finally, Mogler has given no assurance of any kind that he will not engage in similar conduct, indeed, he has challenged his conviction and resulting sentence.

Accordingly, the Court finds that granting an injunction against Mogler to permanently enjoin him from violating Section 10(b) of the Exchange Act and Sections 5 and 17(a) of the Securities Act is appropriate in this case.

### b. Defendant Stevens

With regards to Defendant Stevens, the Court finds that a permanent injunction is appropriate as well. Indeed, Stevens pleaded guilty and admitted to having conspired and helped with the fraudulent scheme; he admitted that he knew of at least one aim of the fraudulent scheme, establishing a fairly high level of scienter or recklessness; the violations at issue were not an isolated incident; and finally, Stevens has given no assurance that he will not engage in a similar violation in the future.

Accordingly, the Court finds that granting an injunction against Stevens to permanently enjoin him from violating Section 10(b) of the Exchange Act and Sections 5 and 17(a) of the Securities Act is appropriate in this case.

### c. Defendant Polanchek

With regards to Polanchek, the Court finds that a permanent injunction is also appropriate. The Court has already drawn an adverse inference from his assertion of the privilege against self-incrimination. Furthermore, as also discussed previously, Polanchek has offered no facts to challenge the SEC's statement of facts in support of its Motion. Having found that Polanchek failed to register as a broker and violated the registration provisions of the securities laws, the Court finds that the totality of circumstances shows that Polanchek is likely to engage in similar fraudulent conduct if he is not enjoined from doing so. He likely knew or was reckless in not knowing that he was not registered as a broker and was participating in the offer and sale of securities; he has not pleaded guilty to any charge and admitted the wrongful character of his conduct; and finally, based on his occupation, future violations are likely.

Accordingly, the Court finds that granting an injunction against Stevens to permanently enjoin him from violating Section 15(a) of the Exchange Act and Section 5 of the Securities Act is appropriate in this case.

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment as to Liability and Non-Monetary Relief (Doc. 99) is **granted in full**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 5th day of March, 2020.

Honorable Steven P. Logan
United States District Judge

21